UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RONALD AND ANGELA JACKSON                  CIVIL ACTION

VERSUS                                     NO: 06-7202

STATE FARM FIRE & CASUALTY CO.             SECTION: R

<u>**ORDER AND REASONS**</u>

Before the Court are defendant State Farm's Motion for
Partial Summary Judgment as to Plaintiffs' Bad Faith Claims (R.
Doc. 124), Motion for Partial Summary Judgment as to Plaintiffs'
Coverage Claims (R. Doc. 139), and two Motions to Strike (R.
Docs. 131, 149).  For the following reasons, the Motion for
Summary Judgment on Bad Faith is GRANTED.  The Motion for Summary
Judgment on Coverage and both Motions to Strike are DENIED.


**I. Background**

This case concerns an insurance dispute over the damage
caused by Hurricane Katrina to plaintiffs' home in Terrytown,
Louisiana.  On August 29, 2005, the home of plaintiffs Ronald and
Angela Jackson was damaged when the hurricane passed through the
New Orleans area.  The home was covered by a homeowners' policy
issued by State Farm with a policy limit of $211,800 for the
dwelling, $21,180 for dwelling extensions, and $158,850 for

1

personal property.  The policy also provides coverage for additional living expenses caused by loss of use of the insured's residence, and the policy limit is marked as "actual loss sustained."  R. Doc. 124, Ex. B at 2.[1]

According to the evidence submitted, plaintiffs notified State Farm about their loss in early September of 2005, and State Farm, after issuing plaintiffs a $2,500 advance, first examined the property on September 13.  *See* R. Doc. 124, Ex. C at 00065. State Farm issued plaintiffs a payment of $42,930.51 in mid-October, which was meant to compensate plaintiffs for the replacement of their roof and damage to exterior items below the roof line.  The payment also addressed replacement of some drywall, trim, and carpet, as well as a regrouting of some of plaintiffs' tile flooring and replacement of specific appliances and pieces of furniture.  *See id.*, Ex. C at 00062.  Plaintiffs indicated that they were not satisfied with the payment.  State Farm reinspected the home and issued an additional payment of approximately $1,300 for damage to plaintiffs' home in late October.  In addition, State Farm paid the Jacksons over $10,000 for additional living expenses in January of 2006 while

---

[1] Page numbers in citations to record documents are to the page number indicated in the pdf document in the record and not necessarily to the page numbers as reflected on the documents themselves.  An exception is made for exhibits with Bates stamps. Page references to those documents are made to the number indicated by the stamp.

negotiations and reinspections continued. *Id.*, Ex. C at 00052-53. Plaintiffs continued to be dissatisfied with State Farm's adjustment, and after ongoing negotiations and reinspections, eventually hired an attorney.[2]

They filed this suit in Louisiana state court on August 24, 2006, and defendants removed it to this Court on October 3rd of the same year. Plaintiffs' complaint asserts claims for contractual damages, as well as bad-faith damages under Louisiana law. State Farm now moves for summary judgment on both plaintiffs' bad faith claims and their contractual coverage claims. In addition, State Farm moves to strike two of plaintiffs' filings. The Court rules as follows.


**II. Discussion**

*A. Motions for Summary Judgment*

    <u>1. Legal Standard</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d

---

    [2] Plaintiffs have been represented by, and have terminated the services of, numerous counsel during the course of this litigation. *See*, *e.g.*, R. Docs. 30, 91 They now proceed *pro se*.

1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in

the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

Finally, courts construe briefs submitted by *pro se* litigants liberally, *see Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 n.1 (5th Cir. 1983), and a court will "apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam). This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing." *Jones v. Alfred*, No. 09-40256, 2009 WL 4250636, at *2 (5th Cir. Nov. 30, 2009). Furthermore, the evidentiary requirements of summary judgment apply equally to *pro se* litigants as they do to represented parties. "Although pro se litigants are not held to the same standards of compliance with formal or technical

pleading rules applied to attorneys, [the Fifth Circuit has] never allowed such litigants to oppose summary judgments by the use of unsworn materials." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *see also Morales v. Boyd*, 304 Fed. App'x 315, 318 (5th Cir. 2008) (quoting *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981)).

### 2. Motion for Summary Judgment on Plaintiffs' Bad Faith Claims

State Farm moves for summary judgment on plaintiffs' bad-faith claims. Specifically, it argues that the evidence in this case establishes that the dispute between the parties is nothing more than a good-faith disagreement about whether plaintiffs are entitled to further insurance proceeds, and that plaintiffs are unable to demonstrate that defendant acted in bad faith.

Louisiana law imposes penalties on insurers who arbitrarily or capriciously fail to pay a claim. *See* LA. REV. STAT. §§ 22:1892, 22:1973(b)(5).[3] In order to recover the statutory penalties, a claimant must submit a satisfactory proof of loss and show that the insurer failed to pay the claim within the applicable statutory period either without probable cause or in

---

[3] Sections 22:1892 and 22:1973 were previously numbered as §§ 22:658 and 22:1220, respectively. Furthermore, the Louisiana Supreme Court has noted that both statutes incorporate the same standard and proscribe the same conduct. *Reed v. State Farm Mut. Auto. Ins. Co.,* 857 So. 2d 1012 (La. 2003). The cases interpreting the two provisions are used interchangeably.

an arbitrary and capricious manner.[4] *Meadowcrest Living Center L.L.C. v. Hanover Ins. Co.*, 2008 WL 2959707, at *4 (E.D. La. 2008). The statutes penalize "an insurer whose willful refusal of a claim is not based on a good-faith defense." *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 999 So. 2d 1103, 1114 (La. 2008) (citing *Reed v. State Farm Mut. Auto. Ins. Co.,* 857 So. 2d 1012 (La. 2003)). While an insurer cannot "stonewall" the insured because she cannot show her exact amount of damage, the insurer is not required by the bad faith statutes to pay all of the insured's claim within the statutory period to avoid penalties. *La. Bag*, 999 So. 2d at 1114-16. If the extent of loss is contested, the insurer need only tender the "undisputed portion" of the claim, or "the reasonable amount which is due." *Id.* (citing *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1091 (La. 1985)). This means the insurer must pay the insured "a figure over which reasonable minds could not differ" within the statutory period. *Id.* (citing *McDill*, 475 So. 2d at 1092). "A refusal to pay the full amount claimed will not be arbitrary and capricious when the dispute had a good faith basis." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009) (citing *Pendarvis v. Am. Bankers Ins. Co.*, 2008 WL 2280235, at *7-8 (M.D. La. 2008) (finding no bad faith when insured and insurer engaged

---

[4] LA. REV. STAT. §§ 22:1892 and 22:1973 set statutory time periods of thirty days and sixty days respectively.

in continuing negotiation over the value of the loss following Hurricane Katrina, and insurer continued to respond promptly to insured's inquiries)).

The bad faith statutes are penal in nature and should be strictly construed. *McDill*, 475 So. 2d at 1092. "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is *clear* that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay." *Reed,* 857 So. 2d at 1021 (emphasis added); *see also Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 130 (La. Ct. App. 1996) ("In bad faith actions, the insured is seeking extra-contractual damages, as well as, punitive damages. Therefore, the insured's burden is great."). The Court should impose penalties only "when the facts 'negate probable cause for nonpayment.'" *La. Bag*, 999 So. 2d at 1114 (*quoting Guillory v. Travelers Ins. Co.*, 294 So. 2d 215, 217 (La. 1974)).

Since the insured bears the burden to prove bad faith, *Reed,* 857 So. 2d at 1021, plaintiffs must set forth specific facts indicating that a genuine issue exists for trial. *Celotex*, 477 U.S. at 324-25. They cannot rely on the pleadings alone. *Id.*

In response to this motion, plaintiffs submitted numerous documents as evidence.[5] Although plaintiffs do not label these

---

[5] Plaintiffs have not submitted a memorandum of law in response to State Farm's motion for summary judgment. They have included a "Statement of Undisputed Facts," but it consists

documents or explain what most of them are, it appears that the
bulk of their submissions are various contractors' and
engineering estimates, as well as correspondence with State Farm
and the Louisiana Department of Insurance.  At no point do
plaintiffs specifically identify what damage is supposedly
undisputed or which costs State Farm arbitrarily and capriciously
refused to pay.  They maintain that the amount paid is
insufficient to cover their loss, but beyond that, their specific
arguments for bad faith are not clear.

None of this evidence submitted to the Court indicates that
the general dispute between the parties is anything more than a
good-faith dispute about coverage and the extent of the damage.
Again, plaintiffs have the burden of demonstrating an issue of
fact that reasonable minds could not differ over whether a
portion of payment was due, and they must do this by pointing to
facts that negate probable cause for nonpayment.  *La. Bag*, 999
So. 2d at 1114-16; *see also Kodrin v. State Farm Fire & Cas. Co.*,
314 Fed. App'x 671, 679 (5th Cir. 2009) (a plaintiff's burden is
to demonstrate that the insurer "withheld payment unjustifiably

---

almost exclusively of disputed facts.  Although some of the
assertions made in this document appear to be testimonial in
nature, the Fifth Circuit has made very clear that an unsworn
statement such as this is not evidence that would overcome
summary judgment.  *See, e.g., Morales*, 304 Fed. App'x at 318
("[W]e have never allowed [pro se] litigants to oppose summary
judgments by the use of unsworn materials.") (quoting *Barker*, 651
F.2d at 1123).  The Court will therefore examine only the
materials attached to the motion.

and without cause"). Furthermore, "where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties." *Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 173 (La. 2000).

The uncontradicted evidence, much of which takes the form of a State Farm "activity log" recording events related to plaintiffs' claim, indicates that plaintiffs' basic position throughout the adjustment was that they were entitled to the policy limits on their claim and that they wanted their entire house gutted and all their cabinets, drywall, and tiling replaced. The evidence further demonstrates that plaintiffs were reluctant to submit any documentation in support of their claim.[6] For example, on October 25, 2005, the State Farm adjuster advised plaintiffs during an inspection to obtain additional estimates from contractors and forward them to State Farm if they thought the earlier payments were insufficient, but plaintiffs "refused to forward anything." R. Doc. 124, Ex. C at 00060. Plaintiffs "did not want anything but [the] policy limits," and they

---

[6] The parties, in their filings, do not address the issue of whether State Farm received a proof of loss for additional damages beyond those for which State Farm initially tendered payment, or whether proof of loss they may have received was unsatisfactory in any respect. Because the Court finds that State Farm's failure to pay was not arbitrary, capricious, or without probable cause, the Court need not and thus does not reach the proof-of-loss issue.

requested the policy limits and stated that they would "return the unused portion." *Id.*, Ex. C at 00059. Mr. Jackson further "stated that he was not sending any estimates and that [State Farm] would pay him complete [additional living expenses] and policy limits on his home or he would contact his attorney." *Id.*, Ex. C at 00058.

Furthermore, plaintiffs at one point argued that their home suffered severe cracking because of Hurricane Katrina and needed to be leveled. Mr. Jackson testified that his home needed to be leveled "[b]ecause my house suffered movement from the high winds . . . [and] [t]here are severe cracks inside the home and outside the home." R. Doc. 124, Ex. H at 12 (deposition testimony of Mr. Jackson). These claims, however, were not supported by evidence, and are contradicted by an engineering report prepared by one of plaintiffs' own experts. *See* R. Doc. 125, Ex. 3 at 4 (stating that the foundation "appears in satisfactory condition with no significant cracks or structural defects observed" and that foundation shifts are due to a natural settlement cycle).

Plaintiffs have submitted no evidence that would create a genuine issue of material fact as to the accuracy of these events. The evidence they have submitted appears to consist largely of contractors' estimates, thought there is no indication that many of these documents were submitted to State Farm at any

point.  In fact, only two documents detailing structural or property damage were evidently transmitted to State Farm, and State Farm has produced specific reasons, supported by evidence, why it had legitimate doubts about the accuracy of these documents.  *See* R. Doc. 124, Ex. C at 00042.

The first estimate, prepared by Lago Development, LLC, lists the costs of repairing the wind damage to plaintiffs' home at approximately $210,000.  R. Doc. 125, Ex. 1 at 00151.  The deposition testimony of Paul DiBenedetto, the contractor who prepared the estimate, however, indicates that several of the repairs recommended in the estimate were included at plaintiffs' insistence.  R. Doc. 124, Ex. F at 5, 9.  He indicated that some of the recommendations related to the decision to tear the drywall out of the entire house "may have been, you know, a little bit of a stretch," but that plaintiffs would not accept anything less than full removal and replacement.  He further stated that he included his recommendation to replace the cabinetry in the kitchen at plaintiffs' insistence.  *Id.* at 6-7.

DiBenedetto's admissions that certain items in the report were added at plaintiffs' insistence, State Farm contends, erodes the credibility of the report.  State Farm further claims that DiBenedetto informed it during an inspection that "his estimate reflects the work Insureds want completed" and that he "agreed that many items in his estimate could not support [a finding of

accidental direct physical loss]." R. Doc. 124, Ex. C at 00040.

Furthermore, State Farm's engineering expert opined that "Mr.

DiBenedetto's estimate for essentially gutting the house and

rebuilding it encompasses a lot of unnecessary work." R. Doc.

24, Ex. M at 11; *see also id.* at 10 ("There was no indication of

damage to the kitchen cabinets, countertops, or appliances from

Hurricane Katrina.").

The second document plaintiffs submitted to State Farm was

the above-mentioned engineering report assessing the structural

integrity of the home. Although plaintiffs claim that their home

suffered severe cracking because of Hurricane Katrina, *see* R.

Doc. 124, Ex. H at 12 (deposition testimony of Mr. Jackson

stating that the home needs to be leveled "[b]ecause my house

suffered movement from the high winds . . . [and] [t]here are

severe cracks inside the home and outside the home"), this report

contradicts some of these claims. *See* R. Doc. 125, Ex. 3 at 4

(stating that the foundation "appears in satisfactory condition

with no significant cracks or structural defects observed" and

that foundation shifts are due to a natural settlement cycle).

It does, however, lend credence to plaintiffs' claim that cracks

in the sheetrock on the interior of plaintiffs' home was caused

by winds. The report states that "[t]here is some cracking of

the interior sheetrock, opening of the millwork and frame joints

and nail heads visible which appears to be due primarily from

movement associated with the high winds." *Id.*, Ex. 3 at 3.

State Farm, in response, contends that the interior
sheetrock was cracked due to non-hurricane-related settlement of
the foundation.  It provides an engineer's report stating that
the "house has experienced some differential settlement,
unrelated to Hurricane Katrina, which has led to cracking of the
exterior brick veneer and interior sheetrock and tile finishes."
R. Doc. 124, Ex. M at 9.  State Farm specifically notified
plaintiffs of its view that "the damage to your brick veneer,
ceramic tile, and cracks in the drywall above doors and windows
was caused by settlement," and indicated that damage caused by
settlement and cracking is not covered by the policy.  R. Doc.
125, Ex. 5; *see also* R. Doc. 124, Ex. B at 13 (policy exclusion
for damaged caused by "settling, cracking, shrinking, bulging, or
expansion of pavements, patios, foundation, walls, floors, roofs,
or ceilings)."

The Court cannot find, based on this evidence, that
plaintiffs have created an issue of fact that State Farm's
nonpayment of these costs was in bad faith.  The evidence
discloses nothing more than a coverage dispute.  In order to
recover on bad-faith damages, plaintiffs must show more than
disagreement between the parties, *La. Bag*, 999 So. 2d at 1114-16,
and State Farm's legitimate doubts about coverage do not amount
to bad faith.  *Calogero*, 753 So. 2d at 173.  It appears from the

evidence that plaintiffs took the position that they were
entitled to their policy limits without having to submit
documentation in support of their damages.  Furthermore, for both
documents that detail damage for which State Farm allegedly did
not pay, State Farm has identified specific reasons, which are
supported by documentation in the record, why it did not think
that the assessment of damage or costs of repair were accurate or
covered by the policy.  In making the decision not to pay for
additional damage, it relied on the opinions of its own expert,
as well as its own assessment of damages that resulted from
inspection of the premises.  This does not mean, of course, that
State Farm's position as to damage or coverage is ultimately
correct.  It is rather an indication that the costs were
reasonably disputed, and the Court cannot hold that reasonable
minds are unable to differ over whether State Farm should have
paid the costs plaintiffs request.  *See Reed*, 857 So. 2d at 1021
("when there is a reasonable and legitimate question as to the
extent and causation fo a claim, bad faith should not be inferred
from an insured's failure to pay within the statutory time limits
when such reasonable doubts exist").  While a plaintiff need not
submit "proof of specific acts or proof of the insurer's state of
mind . . . to establish conduct that is arbitrary, capricious or
without probable cause," *La. Bag*, 999 So. 2d at 1121, it also
cannot rest on bare assertions that are unsupported by any

evidence.

In addition, the Fifth Circuit has indicated that "an insured who fails to provide his insurer with information required to process his claim cannot then claim the insurer acted arbitrarily in delaying payment." *Dickerson*, 556 F.3d at 299. State Farm has submitted uncontradicted evidence that plaintiffs did not submit documentation to State Farm as requested. *See* R. Doc. 124, Ex. C.  Plaintiffs notified State Farm of the loss in early September of 2005, and, after the initial payment for damage was issued, notified State Farm that they were dissatisfied with the payment.  State Farm's documents disclose that, after this, plaintiffs requested additional payment but either delayed or refused to turn over relevant documents.  As noted, plaintiffs requested their policy limits but explicitly declined to forward any supporting documentation.  *See* R. Doc. 124, Ex. C at 00058-60.

Although it appears that plaintiffs submitted roof estimates in early 2006, *id.*, Ex. C at 00052, as well as various receipts for additional living expenses, *id.*, Ex. C at 00049, 00065, it does not appear from the record that State Farm received a general contractor's estimate until August 16, 2006, which was slightly more than a week before this suit was filed.[7]  *Id.*, Ex.

---

[7] Plaintiffs, in their opposition to State Farm's other motion for summary judgment, include a letter to State Farm from a law firm "that has been contacted by Mr. Ronald Jackson," dated

16

C at 00042.

Furthermore, plaintiffs evidently sought payment for significant structural damage for their home. *See* R. Doc. 124, Ex. H at 12 (deposition testimony of Mr. Jackson stating that the house needed to be leveled because of structural damage); *id.*, Ex. C at 00050 (activity log recording Mr. Jackson's concerns about structural cracking during February 19, 2006, inspection). Mr. Jackson indicated during an inspection that he had obtained an engineer's report regarding such cracking, and that he "might" send a copy to State Farm. Plaintiffs were advised to submit a detailed estimate of this damage. *Id.* State Farm again requested a copy of this report on March 2, to which Mr. Jackson replied, "no, not yet." *Id.* In July of that year, after plaintiffs had hired counsel, their attorney stated that he had a copy of this report and agreed to send it to State Farm. *Id.*, Ex. C at 00044. The Activity Log indicates that the report still had not been exchanged several days later, and by mid-August of 2006 the report still had not been turned over. *Id.*, Ex. C at 00042-43. The record does not disclose when this report was

―――――――――――

March 15, 2006. R. Doc. 144, Exhibits at 1. This letter refers to "an estimate setting forth the accurate cost of the repairs" that Mr. Jackson sent to State Farm. No copy of this estimate appears in the record, however. An entry in State Farm's activity log from March 13, 2006, indicates that Mr. Jackson submitted some receipts for additional living expenses, as well as "receipts for emergency repairs done to his house for a different claim." R. Doc. 124, Ex. C at 00049. The letter appears to be referring to these receipts.

eventually submitted to State Farm, although State Farm claims
that it was not exchanged until it was received in discovery in
2008.  R. Doc. 124 at 10.

Again, plaintiffs have submitted nothing to indicate that
there is an issue of material fact as to whether the events
described in these documents took place.  An insurer cannot be
held liable for bad-faith adjustment of claims when the insured
fails to timely exchange the documents that allegedly underlie
the bad-faith claims.  Plaintiffs have had ample opportunity to
submit summary-judgment-type evidence that might create an issue
of fact, but the evidence they have submitted does not do so.

Because plaintiffs have failed to adduce evidence
demonstrating that State Farm acted arbitrarily, capriciously, or
without probable cause in declining to pay their claim, State
Farm is entitled to summary judgment on the bad-faith claims.  In
addition, they have not provided any evidence in response to
State Farm's evidence that would create a genuine issue of
material fact as to whether they submitted documentation in such
a manner that State Farm's conduct might be considered in bad
faith.  Summary judgment on bad-faith claims is not determinative
of coverage or plaintiffs' potential entitlement to further
payment under the policy.

<u>3. Motion for Summary Judgment as to Plaintiffs' Coverage</u>
<u>Claims</u>

State Farm also moves for summary judgment on plaintiffs'
coverage claims.  It argues that plaintiffs had duties under the
insurance policy to provide State Farm with specifications of
damage and estimates within 60 days of the loss, to provide
records and documents State Farm requests, and to exhibit the
damaged property.  These duties can be found under a section
entitled "Conditions," and the contract states that an insured
may not bring suit unless the conditions had been fulfilled.  *See*
R. Doc. 124, Ex. B at 17-18.  State Farm contends that because
plaintiffs breached these conditions, it cannot be held liable
under the policy.

"In an insurance contract, the insured's duty to provide
information ordinarily arises only under the express policy
obligations." *Holden v. Connex-Metalna Mgmt. Consulting*, No. 98-
3326, 2000 WL 1741839, at *2 (E.D. La. Nov. 22, 2000) (citing
*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, 68 F.3d
905, 912 (5th Cir. 1995)).  State Farm is correct in its
assertion that, in specific circumstances, an insured's failure
to comply with its policy's cooperation clauses may preclude the
insurer's liability.  *See, e.g., Lee v. United Fire & Cas. Co.*,
607 So. 2d 685, 688 (La. Ct. App. 1992).

It must be made clear, however, that a cooperation clause is
emphatically not an escape hatch that an insurer may use to flee

19

from liability.  It is most certainly not the law of Louisiana
that any failure to comply with the policy conditions, no matter
how trivial, will relieve an insurer from liability under the
policy it drafted and issued.  On the contrary, a pre-trial
finding that an insured breached a cooperation clause and that an
insurer is not liable is "a draconian remedy which [courts] do
not ordinarily favor." *Lee*, 607 So. 2d at 685.  An insurer who
hopes to prove an insured's noncompliance with a cooperation
clause therefore faces a considerable burden, especially on
summary judgment.  First, the law is clear that the breach of a
cooperation clause must be material and prejudicial before an
insurer may be relieved of liability. *Williams v. Lowe*, 831 So.
2d 334, 336 (La. Ct. App. 2002); *see also Desadier v. Safeway
Ins. Co.*, 712 So. 2d 925, 928 (La. Ct. App. 1998).  The burden of
demonstrating prejudice falls on the insurer. *Trosclair v. CNA
Ins. Co.*, 637 So. 2d 1168, 1170 (La. Ct. App. 1994).  Second, if
an insurer claims that an insured failed to submit information,
"the insurer must show a diligent effort to obtain the
information." *Cagle*, 68 F.3d at 912.  Finally, breach of a
cooperation clause is a factually specific inquiry that must be
determined on the facts of each case. *Freyou v. Marquette Cas.
Co.*, 149 So. 2d 697, 699 (La. Ct. App. 1963); *see also Holden*,
2000 WL 1741839, at *3; *Bernard v. Hungerford*, 157 So. 2d 246,
250 (La. Ct. App. 1963).  One Louisiana court went so far as to

suggest that it had "reservations concerning whether summary judgment is ever appropriate where an insurer claims a devolutive condition (refusal to cooperate) became operative, terminating the insurer's contractual obligations. It seems that the issue will always be a factual one that should be decided by a trial on the merits or directed verdict." *Trosclair*, 637 So. 2d at 1170 n.2 (parenthetical in original). An insurer is not entitled to nullify an insurance policy by making a showing that an insured failed to respond to burdensome or oblique requests in a minor way, or that an insured failed on a single occasion to comply with a policy provision that it followed on other occasions.

The Fifth Circuit case of *Mosadegh v. State Farm Fire & Cas. Co.*, 330 Fed. App'x 65 (5th Cir. 2009), is not to the contrary. There, the court held that an insured materially, prejudicially, and on numerous occasions breached the cooperation clause in its insurance policy, and that the insurer was therefore entitled to summary judgment. The case does not engage in a lengthy analysis, as is expected from an unpublished and non-precedential opinion, but its plain language makes clear that the insurer met its high burdens. *Mosadegh*'s brevity should not be read to imply that an insurer may escape liability with a minimal showing. Other Louisiana cases holding that an insurer could escape liability because of a breach of a cooperation clause similarly focus upon ample evidence of noncompliance, often including

egregious behavior by the insured. *See, e.g., Lee*, 607 So. 2d at 687-88 (finding that insureds "intransigent[ly] refused" to comply with cooperation clause, engaged in "protracted, willful, and apparently bad faith refusal to furnish information and documents over a period exceeding one year," and that there was "intentional bad faith failure to comply with the policy provisions"); *see also Brantley v. State Farm Ins. Co.*, 865 So. 2d 265, 271-72 (La. Ct. App. 2004) (considerable evidence of an extended pattern of noncompliance by insureds).

State Farm argues that plaintiffs failed to comply with the policy condition requiring them to exhibit the damaged property because of an incident that took place during an inspection of the premises in May of 2007. After State Farm's expert and counsel examined the exterior of the home, Mr. Jackson refused to let them in with a camera.[8] After they entered the home, Mr. Jackson on more than one occasion approached State Farm's counsel, assumed a threatening posture, and told him to "back off." Eventually State Farm's counsel left the interior of the home, and Mr. Jackson contacted the Jefferson Parish Sheriff's Office, who ejected State Farm's counsel from the exterior premises. He was never allowed to inspect certain areas of the

---

[8] These facts are taken from the Magistrate Judge's decision on State Farm's Motion to Compel Entry upon Land and Motion for Costs (R. Doc. 23). That decision indicates that "[t]he facts are not disputed."

22

home, although State Farm's expert was so allowed.  State Farm

moved to compel entry onto plaintiffs' property and also for

costs.  The Magistrate Judge assessed costs against plaintiffs

and ordered that State Farm be able to inspect the property again

and take photographs.  The Magistrate Judge also noted that "[i]f

Jackson does anything to block or impede the inspection, the

undersigned will recommend that his action be dismissed with

prejudice."  R. Doc. 23 at 4.

Even if plaintiffs did not comply with the policy provisions

in this instance, the record discloses that plaintiffs allowed

State Farm to inspect their property on numerous occasions,

apparently without incident.  *See* R. Doc. 124, Ex. C at 00065

(inspection with State Farm adjuster on September 13, 2005),

00060 (inspection with State Farm adjuster on October 25, 2005),

00050 (inspection with State Farm adjuster on February 19, 2006),

00049 (inspection with State Farm adjuster on March 2, 2006),

00040 (inspection with State Farm adjuster on August 29, 2006).

Furthermore, there is no allegation that plaintiffs refused to

comply with the Magistrate Judge's order.  On the basis of this

one incident and in light of the numerous instances in which the

property was apparently exhibited, the Court can not hold that

plaintiffs cannot bring their suit because they failed to comply

with their contractual obligation to exhibit the property.

State Farm also alleges that plaintiffs failed to comply

with the policy conditions obligating them to submit detailed estimates for the repair of damage to buildings or to provide State Farm with records or documents on request. State Farm is correct that, as noted above, there is evidence in the record of plaintiffs' reluctance to supply documents as requested. *See, e.g.,* R. Doc. 124, Ex. C at 00060 (plaintiffs' stated refusal to provide additional documentation in support of their claims). The Court cannot find, however, that this refusal rose to the level that would preclude State Farm's liability. For example, although State Farm suggests that it requested plaintiffs' contractor's report, there is no dispute that plaintiffs eventually provided this document. *See id.*, Ex. C at 00042. That plaintiffs did not provide it until shortly before filing suit does not support a finding that State Farm is sheltered from liability. Furthermore, the record discloses numerous other instances in which plaintiffs submitted documentation of their alleged losses. *See, e.g., id.*, Ex. C at 00065 (receipts submitted on September 27, 2005), 00052 (January 23, 2006, acknowledgment that plaintiffs submitted roof estimates); 00049 (receipts submitted on March 13, 2006).

It is clear that plaintiffs, in certain instances, delayed in submitting their documents to State Farm. This fact contributes to the Court's holding that there is no evidence that State Farm acted in bad faith in failing to make additional

payments under the policy.  But the fact that plaintiffs made numerous submissions of documents, and that they eventually exchanged their contractor's estimate, creates a genuine issue of material fact as to whether they materially complied with the cooperation clauses.  The Court therefore cannot find, based on this evidence, that there are no issues of fact as to whether plaintiffs' conduct precludes State Farm's liability under the policy.

Furthermore, State Farm does not even argue how it was prejudiced by plaintiffs' alleged breach, even though the burden falls on it to do so.  *Trosclair*, 637 So. 2d at 1168 ("The burden is on the insurer to show actual prejudice."); *cf. Mosadegh*, 330 Fed. App'x at 65 (holding that insurer made adequate showing of prejudice); *see also Wright v. Allstate Ins. Co.*, No. 06-485, 2006 WL 3524030, at *3 (W.D. La. Dec. 5, 2006) (denying summary judgment for insurer on cooperation-clause issue in part because it did not contend that it had been materially prejudiced).  Genuine issues of material fact therefore exist as to whether plaintiffs' conduct failed to comply with the policy's cooperation clauses to an extent that would preclude liability for State Farm.  State Farm is not entitled to summary judgment on this issue.


*B. Motions to Strike*

25

State Farm next moves to strike two documents from the record under Federal Rule of Civil Procedure 12(f). These motions are directed to two of plaintiffs' filings that contain allegations about the conduct of State Farm's counsel during the inspection of plaintiffs' home in May of 2007 (R. Docs. 129, 144).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Plaintiffs' motions are not "pleadings" and Rule 12(f) is therefore inapplicable. *See* FED. R. CIV. P. 7(a) (listing the filings that can be considered "pleadings"); *Marquette Transp. Co. v. Trinity Marine Prods.*, Nos. 06-826, et al., 2006 WL 2349461, at *1 n.1 (E.D. La. Aug. 11, 2006) (denying motions to strike "[b]ecause Rule 12(f) contemplates only striking 'pleadings' as defined by the Federal Rules, and because plaintiffs' statements are not pleadings").

To the extent that State Farm requests that the Court use its inherent power to strike the motions, *see, e.g., Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 841 (10th Cir. 2005) (dismissing appeal with prejudice under court's inherent power to disregard abusive filings); *see also Calkins v. Shapiro & Anderson, L.L.P.*, No. 05-815, 2005 WL 3434718, at *3 (D. Ariz. Dec. 13, 2005) (discussing possibility that court has inherent

power to strike motions), or that it requests sanctions against plaintiffs under Rule 11, the requests are denied. Although plaintiffs have not produced any evidence to support their allegations and the Court has no reason to treat them as true, the conduct of the parties during inspections is relevant to the issues underlying these motions for summary judgment. The Court will not purge them from the record simply because they contain scandalous accusations. *Cf. In re Chinese Mfd. Drywall Prods. Liab. Litig.*, __ F. Supp. 2d ___, 2010 WL 277063, at *7 (E.D. La. Jan. 13, 2010) (motions to strike under Rule 12(f) are only granted "when the pleading to be stricken has no possible relation to the controversy") (quoting *Augustus v. Bd. of Pub. Instruction of Excambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)).

## III. Conclusion

For the foregoing reasons, State Farm's motion for summary judgment as to bad faith is GRANTED. Its three other motions are DENIED.

New Orleans, Louisiana, this ___22nd___ day of February, 2010.

_Sarah Vance_

**SARAH S. VANCE**
**UNITED STATES DISTRICT JUDGE**

27